Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 287 | **DATE** | 7/16/2003 |
| **CASE TITLE** | In Re: Motorola Securities Litigation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of State New Jersey for appointment as lead plaintiff, for approval of selection of lead counsel and for consolidation is granted. The law firms of Lite Palma and Wolf Popper are appointed as lead co-counsel. Case Numbers 03 C 437, 03 C 519, 03 C 565, 03 C 834, 03 C 913, 03 C 984, 03 C 1198, 03 C 1459, 03 C 1552, all of which have been reassigned to this court as related cases, are hereby consolidated under Case No. 03 C 287. The consolidated actions shall hereinafter be referred to as "*In re* Motorola Securities Litigation." Status conference is set for August 7, 2003, at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | JUL 23 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 15  36 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 7/16/2003 | |
| | | courtroom deputy's initials | | date mailed notice | |
| | ETV | | | ETV | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JUL 23 2003

In Re : ) No. 03 C 287
)
MOTOROLA SECURITES LITIGATION ) Judge Rebecca R. Pallmeyer

## MEMORANDUM OPINION AND ORDER

Pending before this court are nine related securities class actions filed on behalf of purchasers of Motorola, Inc. ("Motorola") securities. These actions allege that Motorola violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC"). The court has granted the parties' motions for a finding of relatedness, and all of the cases are hereby consolidated in this court pursuant to 15 U.S.C. § 78U-4(a)(3)(B)(ii). (Minute Order, No. 03 C 287, February 28, 2003.) The consolidated actions shall hereinafter be referred to as "*In re* Motorola Securities Litigation."

There are currently three plaintiffs with outstanding motions before this court for appointment as lead plaintiff, and appointment of their chosen counsel as lead counsel.[1] For the following reasons, the court grants New Jersey's motion for appointment as lead plaintiff, and approves New Jersey's choice of lead counsel in this matter.

## BACKGROUND

Plaintiff Stephen Frank filed this class action lawsuit on January 14, 2003 on behalf of purchasers of Motorola securities during the period of February 3, 2000 through April 6, 2001.

---

[1] Two other plaintiffs, the City of Hialeah Police Chapter 185 Share Plan and a conglomerate of groups collectively termed the "MAPERS Funds" (consisting of the City of Westland Police and Fire Retirement System, City of Dearborn Heights Act 345 Police and Fire Retirement System, Waterford Township Police and Fire Retirement System, City of Roseville Employees Retirement System, and the Washtenaw County Employees Retirement System), earlier moved for appointment as lead counsel, but have subsequently withdrawn their motions and have indicated their support for the appointment of the State of New Jersey as lead plaintiff in this action. (Notice of Withdrawal of the Motion of the City of Hialeah Police Chapter 185 Share Plan to be Appointed Lead Counsel; Memorandum in Further Support of the Motion of the MAPERS Funds for Consolidation, Appointment as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel and in Opposition to the Other Motions.)



(Complaint ¶ 1.) Eight actions were subsequently filed in the Northern District of Illinois, in addition to seven related lawsuits filed in the Southern District of New York, and potentially others unknown to the court. (Transcript of Proceedings, *In re Koenemann*, S.D.N.Y., April 15, 2003, at 13.)

Motorola is headquartered in Schaumburg, Illinois, which lies within this court's district. The company has substantial national and international operations in the telecommunications, electronics, semiconductor, computer, and cable television industries. (Frank Complaint ¶ 7.) Motorola common stock trades on the New York Stock Exchange, and approximately 2.3 billion shares are outstanding. (*Id.* ¶ 16.)

In each of the nine cases before this court, the Plaintiffs' allegations relate to the sale of products and services by Motorola to Telsim Mobil Telekomunikayson Mizmetleri A.S. ("Telsim"), a Turkish company, for use by Telsim in developing a cellular telephone network in Turkey.[2] (Memorandum of Law in Support of the State of New Jersey's Motion for Consolidation, to be Appointed Lead Plaintiff and for Approval of its Selection of Lead Counsel, hereinafter "New Jersey's Memorandum," at 3-4.) According to the State of New Jersey, on February 3, 2000, Motorola issued a press release announcing a $1.5 billion agreement with Telsim to provide equipment, services, and infrastructure to expand Telsim's Global System for Mobile Communications network. (Frank Complaint ¶ 21.) Plaintiffs allege that this announcement had a positive effect on Motorola's stock price, as its shares closed on February 3, 2000 at $50.92 per share, up from $48.21 the day before. (New Jersey's Memorandum, at 4.) Plaintiffs allege that Motorola continued over the next several months to issue press releases detailing its business with Telsim, which had the effect of further increasing the value of Motorola stock. (*Id.* at 4-5.)

According to Plaintiffs, however, Defendants' public statements failed to disclose that

---

[2] New Jersey has indicated that any discrepancy between the class periods of defendants in the various actions will be resolved upon the filing of a consolidated amended complaint. (Memorandum of Law in Support of the State of New Jersey's Motion for Consolidation, to be Appointed Lead Plaintiff and for Approval of its Selection of Lead Counsel, at 2, n.3.)

2

Motorola itself was financing the deal with Telsim. The transactions with Telsim were predicated upon an approximately $2 billion vendor financing agreement provided by Motorola. (*Id.* at 5.) Plaintiffs claim that Motorola misled investors by failing to disclose numerous problems related to that loan, including Telsim's failure to insure repayment. (*Id.*) Plaintiffs also allege that Motorola improperly recognized revenue in connection with the Telsim transaction in violation of generally accepted accounting principles ("GAAP"). (*Id.*)

In its Proxy Statement filed with the SEC on March 30, 2001, Motorola disclosed for the first time, according to Plaintiffs, that out of a total of $2.8 billion in gross long-term finance receivables, Motorola had provided $1.7 billion in vendor financing to a single customer in Turkey, that is, Telsim. (Frank Complaint ¶¶ 33-34.) On April 6, 2001 (the last day of the purported class period), a *Bloomberg News* columnist published an analysis of Motorola's loan to Telsim and the related disclosures in the 2001 Proxy Statement. The analysis underscored the risk of non-recovery of the loan to Telsim. (New Jersey's Memorandum, at 6.) That day, Motorola shares declined by 23% from the previous day's close of $14.95 per share to $11.50 per share. (*Id.*) Telsim never repaid the Motorola loan, according to Plaintiffs, and Motorola filed a lawsuit against the Turkish company. (*Id.* at 6-7.) These circumstances led Plaintiffs to file the lawsuits against Motorola that are currently before the court.

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the court must appoint a lead plaintiff in this case. 15 U.S.C. § 78u-4(a)(3). Plaintiff Stephen Frank[3] purchased shares of Motorola stock during the class period (February 3, 2000 to April 6, 2001), and alleges that he was damaged by Motorola's non-disclosures. (Frank Complaint ¶ 6.) Frank filed a class action against Christopher Galvin, the Chairman of the Board and the Chief Executive Officer of Motorola during the class period, as well as other Motorola officials and the company itself. (Id. ¶¶

---

[3] Frank has not identified the date on which he purchased Motorola securities.

7-11.) Similar actions were filed in the Southern District of New York, with the *Barry v. Koenemann* action's pendency noted in *Investors Business Daily* on December 31, 2002. Within 60 days thereafter, on March 3, 2003, Plaintiff Department of the Treasury of the State of New Jersey and its Division of Investment and Market Street Securities, Inc. ("New Jersey" or "the State") filed this motion seeking appointment as lead plaintiff. In addition, a group of class members referred to as the "Commerzbank Lead Plaintiffs" (hereinafter "Commerzbank"), consisting of class members Edward and Anna Mae Appell, Raymond Behvand, Country Trust Bank, Zohreh Jahingiri, Tom Livaditus, Village Park Association, and Commerzbank moved for appointment as lead plaintiff. In addition, the International Brotherhood of Teamsters Local 710 Pension Fund, Health and Welfare Fund, and Employees Pension Fund ("Local 710 Funds"), moved for appointment as lead plaintiff. Commerzbank advances several reasons, discussed below, why New Jersey is not an appropriate choice for lead plaintiff. The Local 710 Funds state that for the reasons set forth by Commerzbank, "it appears that the State of New Jersey may be subject to unique defenses and is not an adequate lead plaintiff." (The Local 710 Funds' Reply in Support of Their Motion to be Appointed Lead Plaintiff, at 1.) The Local 710 Funds also argue that Commerzbank is not a suitable lead plaintiff, and therefore suggest their appointment as lead plaintiff.

## DISCUSSION

### I. Appointment of Lead Plaintiff

Under the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 *et seq.*, presumptively, the lead plaintiff shall be the party with the largest financial interest in the relief sought by the class, assuming that person otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted by a showing that this party will not fairly and adequately protect the interests of the class or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).

The purpose behind the PSLRA is to prevent "lawyer-driven" litigation, and to ensure that "'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs [sic] counsel.'" *In re Oxford Health Plans, Inc., Securities Litigation,* 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998) (quoting H.R. Conf. Rep. No. 104-369). Congress believed this goal could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *Id.* at 46 (citing H.R. Conf. Rep. No. 104-369.)

In this case, the party with by far the largest financial interest is an institutional investor, the State of New Jersey, which alleges that its losses in Motorola common stock and debentures during the class period were $14.35 million. This figure is about three and a half times the alleged losses of $3.9 million claimed by Commerzbank and much more than the $1.52 million claimed by the Local 710 Funds, the two other plaintiffs seeking lead plaintiff status.

The PSLRA states that in addition to having a financial stake, the lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Under Rule 23, a party may serve as a class representative "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a). In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations. *Johnson v. Tellabs, Inc.,* 214 F.R.D. 225, 228 (N.D. Ill. 2002) (citation omitted). A wide-ranging analysis of the Rule 23 factors should be left for consideration of a motion for class certification. *Id.*

5

Under Rule 23(a), the plaintiff's claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditus*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quotations omitted). To satisfy this requirement, the claims of the class representative need not be identical to those of other class members. Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Here, for purposes or selecting the lead plaintiff, New Jersey satisfies the typicality requirement because it (1) purchased Motorola securities during the class period; (2) paid allegedly inflated prices because of claimed false and misleading statements by Motorola officials; and (3) thereby allegedly suffered damages. *Johnson*, 214 F.R.D. at 228.

To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously. *Johnson*, 214 F.R.D. at 228-29 (citations omitted). There is no evidence of a conflict between the interests of New Jersey and the purported class. Furthermore, New Jersey appears to have a substantial interest in the outcome of the case, and the State's choice of counsel seems competent and experienced. Wolf Popper LLP ("Wolf Popper") has frequently been appointed to serve as lead or co-lead counsel in complex, multi-party actions, including securities and antitrust actions, and Lite DePalma Greenberg & Rivas ("Lite DePalma")'s attorneys also have an impressive record in commercial and class action litigation. (Firm Biographies of Wolf Popper LLP and Lite DePalma Greenberg & Rivas LLC, Exhibits E & F to Declaration of Lester L. Levy in Support of the State of New Jersey's Motion for Appointment as Lead Plaintiff.)

For purposes of selecting the lead plaintiff, New Jersey satisfies the typicality and adequacy

requirements imposed by Rule 23. Therefore, absent a showing that New Jersey will not fairly and adequately represent the class, or is subject to unique defenses that will render the State incapable of representing the class, the court will grant New Jersey's motion.

Commerzbank claims it has made such a showing. Commerzbank argues that New Jersey will be an inadequate lead plaintiff because of alleged unique defenses that will be asserted by Motorola against the State. Commerzbank's principal objection is that, as described in two published articles, New Jersey officials have previously criticized the State's own Department of Investment, blaming it for losses suffered by the State in the falling stock market of the last few years. Commerzbank argues that Defendants will challenge New Jersey's claim for relief by arguing that it was the conduct of state officials that resulted in New Jersey's investment losses. To support this argument, Commerzbank has submitted articles from the *Wall Street Journal* and the *Bergen Record*. The *Wall Street Journal* article, dated December 19, 2002, does not mention Motorola or the fact that New Jersey invested in Motorola stock. The article reports that Governor Jim McGreevey said in an interview that the State's losses from its pension fund "are not a temporary aberration, but the result of poor management." (Ianthe Jeanne Dugan, "Fingers Point at New Jersey Fund: Pension Operation Racks Up Huge Losses Since Bubble Burst, Prompting Suits and Shake-Up," *Wall St. Journal*, Dec. 19, 2002, at C1, Ex. A to Commerzbank's Memorandum of Law in Opposition to the Competing Lead Plaintiff Motions.) The article also notes, however, that he made this statement after announcing that the state was suing four major corporations "whose accounting practices allegedly cost the pension fund at least $150 million." *Id.*

The *Bergen Record* article reported that New Jersey planned to file lawsuits against four companies, but Motorola was not one of the companies listed. (Charles Stile, "State Suing Four Companies Over Pension Fund Losses; Alleged Overstating of Earnings Targeted," *Bergen Record*, Nov. 26, 2002, at A1, Ex. B to Commerzbank's Memorandum of Law in Opposition to the

7

Competing Lead Plaintiff Motions.) The article did not mention Governor McGreevey's criticisms of the state's pension fund managers. The article did report that New Jersey Attorney General David Samson had "established a pool of about a dozen private law firms that will be chosen to direct the litigation on a contingency basis . . . . Among the candidates are several firms that are closely allied to McGreevey, the Democratic Party, and Trenton's political establishment." *Id.* A sidebar appearing beside the article listed four law firms as having been recommended to handle litigation against corporations; the court notes that the firms representing New Jersey in this action do not appear on the list. *Id.*

Commerzbank argues that "whether or not the losses sustained by New Jersey were a result of Motorola's misconduct or New Jersey's mismanagement will be a major subject for dispute." (Commerzbank's Memorandum of Law in Opposition to the Competing Lead Plaintiff Motions and in Further Support of the Motion of the Proposed Commerzbank Lead Plaintiffs for Consolidation, Appointment as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel, at 2.) Commerzbank contends that New Jersey's "concessions" and "public admissions" will present a wonderful opportunity for the defense to argue that the losses incurred by New Jersey were not the result of Motorola's own misfeasance, but due to their own poor investment practices. (*Id.* at 3.)

The court is uncertain that these newspaper articles constitute "proof" that New Jersey's investors acted negligently with respect to Motorola securities. Even assuming Commerzbank has established the New Jersey investors were negligent, the court is not persuaded that this disqualifies New Jersey from acting as lead plaintiff here. Courts have repeatedly stated that contributory negligence is not a defense to an intentional or reckless tort such as securities fraud. See *Indosuez Carr Futures, Inc. v. Commodity Futures Trading Com'n*, 27 F.3d 1260, 1265 (7th Cir. 1994); *Siebel v. Scott*, 725 F.2d 995, 1000 (5th Cir. 1984); *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1516 (10th Cir. 1983); *Dupuy v. Dupuy*, 551 F.2d 1005, 1018 (5th Cir. 1977), *cert. denied*,

434 U.S. 911; *Xaphes v. Merrill, Lynch, Pierce, Fenner and Smith*, 600 F.Supp. 692, 694 (D. Me. 1985). Our Court of Appeals has stated "that a buyer's failure to exercise due care was not a defense in a 10b-5 case." *Indosuez Carr Futures*, 27 F.3d at 1265, citing *Sunstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir. 1977). Rather, the buyer's actions must be at least reckless in order to constitute a defense. *Sunstrand*, 553 F.2d at 1040. Nothing in the referenced newspaper articles seems likely to lead to a unique defense.

Judge Lynch, who presides over the consolidated actions filed against Motorola in the Southern District of New York, commented in response to Commerzbank's argument, "[t]here either was a fraud or there wasn't." (Transcript of Proceedings, *In re Koenemann*, S.D.N.Y., April 15, 2003, at 10.) In appointing New Jersey as lead plaintiff in the New York cases, Judge Lynch noted that if there was no fraud on Motorola's part, then no plaintiff will recover. If there was fraud, then all will presumably recover, unless there is evidence that any of them acted recklessly. Finally, as Judge Lynch aptly pointed out, if New Jersey's investment strategy during the early part of this decade was less than ideal, this actually may make the State more typical of those who have lost money in the stock market rather than less. (*Id.* at 11.) This court agrees with Judge Lynch that Commerzbank has not offered adequate support for its assertion that New Jersey is subject to unique defenses. Notably, in another securities fraud class action, another judge of this court has appointed the State of New Jersey as lead plaintiff, concluding that New Jersey officials' criticism of the State's own Department of Investment did not disqualify New Jersey. See *Craig v. Sears, Roebuck & Co.*, 253 F.Supp.2d 1046, 1048 (N.D. Ill. 2003).

Nor is the court moved by Commerzbank's charge that a conflict of interest precludes New Jersey from acting as lead plaintiff. Commerzbank notes that the *Bergen Record* reported that the McGreevey Administration considered hiring law firms to represent the State in securities litigation that made political contributions to the governor. (Charles Stile, "State Suing Four Companies Over Pension Fund Losses; Alleged Overstating of Earnings Targeted," *Bergen Record*, Nov. 26, 2002,

9

at A1, Ex. B to Commerzbank's Memorandum of Law in Opposition to the Competing Lead Plaintiff Motions.) As the court previously noted, the article made no mention of the litigation against Motorola, nor did it name either Lite DePalma or Wolf Popper, the two firms that were selected by the State to represent it in this action. Furthermore, Lester L. Levy and Allyn Z. Lite, senior partners at Wolf Popper and Lite DePalma, respectively, submitted a Joint Declaration to the court denying that New Jersey retained the two firms as a reward for political contributions made to Governor McGreevey. (Joint Declaration of Levy and Lite in Further Support of New Jersey's Motion to be Appointed Lead Plaintiff and in Opposition to Commerzbank AG's Opposing Motion to be Appointed Lead Plaintiff ¶ 1.) The attorneys have sworn that neither firm nor any of the attorneys at the firms made or caused others to make political contributions to the governor of New Jersey. (*Id.* ¶ 2.) Commerzbank's unsupported assertion to the contrary does not merit further discussion.

Neither Commerzbank nor the Local 710 Funds has offered sufficient proof against New Jersey, and therefore the court grants New Jersey's motion for appointment as lead plaintiff.

## II. Appointment of Lead Counsel

The PSLRA permits the lead plaintiff to "select and retain counsel to represent the class . . . subject to the approval of the court." 15 U.S.C. § 78u-4(a)(3)(B)(v). New Jersey has selected Lite DePalma and Wolf Popper as co-counsel to represent the class in this action. Both firms have substantial experience in securities class action litigation. (Firm Biographies of Wolf Popper LLP and Lite DePalma Greenberg & Rivas LLC, Exhibits E & F to Declaration of Lester L. Levy in Support of the State of New Jersey's Motion for Appointment as Lead Plaintiff.)

The court has also received assurances from New Jersey State Treasurer John McCormac that steps have been taken to ensure that attorneys' fees paid to the law firms will be fair and reasonable under the circumstances. The fee agreement provides for varying percentages for

attorneys' fees depending on the amount recovered and the stage of the proceeding, and the court has been informed that the amounts are "significantly below the 25% - 30% range that are often awarded in these types of cases."[4] (Declaration and Certification of John E. McCormac in Support of New Jersey's Motion to be Appointed Lead Plaintiff, and for Approval of its Selection of Lead Counsel, at ¶ 10.) Because the proposed fees suggested by the firms do not appear unreasonable, the court approves New Jersey's selection of lead counsel. At the conclusion of the litigation, of course, the court will carefully scrutinize any proposed fee award and will approve only a reasonable fee. 15 U.S.C. §78u-4(a)(6) (limiting the total award of attorneys' fees and expenses to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

## CONCLUSION

The court grants New Jersey's motion for consolidation, appointment as lead plaintiff, and the appointment of Lite DePalma and Wolf Popper as lead co-counsel. The court is aware that there may be a motion to transfer the cases from the Southern District of New York to this court, and is willing to accept such cases, as well as any other related securities law challenges.

ENTER:

Dated: July 16, 2003

REBECCA R. PALLMEYER
United States District Judge

---

[4] To confirm this conclusion, the court will accept New Jersey's offer to disclose the agreement to the court for *in camera* review.

11