**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| _____ ) | | |
| IN RE MOTOROLA SECURITIES ) LITIGATION ) | 03 c 287 | |
| ) | Judge Rebecca R. Pallmeyer | |
| ) | | |
| _____ ) | | |
| BRUCE G. HOWELL, on Behalf of ) Himself and a Class of Persons Similarly ) Situated, ) | | |
| ) | Case No. 03 c 5044 | |
| Plaintiff, ) | | |
| ) | Judge Rebecca R. Pallmeyer | |
| v. ) | | |
| ) | | |
| MOTOROLA, Inc., et al., ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| _____ ) | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR THE
ISSUANCE OF A LETTER OF REQUEST TO TAKE TESTIMONY IN THE UNITED
KINGDOM UNDER THE HAGUE EVIDENCE CONVENTION OR, IN THE
ALTERNATIVE, TO USE PRIOR TESTIMONY AND DEPOSITIONS AS IF THEY
WERE TAKEN IN THIS CASE**

As the Court is aware, these cases concern allegations that Defendants made false

statements in violation of the securities laws in connection with loans made by Motorola to a

Turkish company, Telsim. Motorola made vendor financing loans to Telsim to enable it to

purchase Motorola products. Plaintiffs question the judgments and disclosures made by

Motorola in connection with these loans. In its defense, Motorola plans to show that its conduct

with regard to Telsim was reasonable and appropriate. Two elements of the proof Motorola

plans to introduce are related to this motion. First, Motorola plans to show that Nokia, one of its

competitor telecommunications manufacturers, also provided similar financing to Telsim and

had similar opinions about the value of Telsim.  Second, Motorola plans to show that its interest in 66% of the stock of the company that owned Telsim gave it more than sufficient coverage for its loan to Telsim.  Motorola's conclusion was based, in part, on contacts that Motorola personnel had with Merrill Lynch about the value of Telsim.  Merrill Lynch had been hired during the relevant period by Telsim to try to sell its business and had received numerous offers from large telecom companies to buy Telsim for far more than the Motorola loans.  Motorola relied, in part, on this information in reaching its conclusions about the value of its collateral.

As the Court is aware, after Telsim defaulted on its loans to both Motorola and Nokia, the two corporations filed suit against the Uzan family, the family that controlled Telsim, alleging fraud and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statutes (hereinafter known as the "New York Action").[1]  Early on in the discovery of this case, Motorola advised Counsel for Lead Plaintiff that Merrill Lynch employees Paul Raphael and Sean Carney had provided sworn testimony in the New York Action.  This information was included in Defendants' Initial Disclosures Pursuant to the Federal Rule of Civil Procedure 26(a)(1) and the Parties' Planning Reports.  Also, on November 30, 2004, Defendants produced, among other things, copies of the trial exhibits from the New York Action.  Included as such exhibits were redacted versions of the Carney and Raphael depositions[2], and a redacted trial transcript

---

[1] *See Motorola Credit Corp. v. Uzan*, No. 02 Civ. 0666 (JSR) (S.D.N.Y  filed Jan. 28, 2002).  As the Court is aware, after a trial before Judge Rakoff, Motorola was awarded compensatory damages of over $2 billion for the fraud perpetrated on Motorola by the Uzans in connection with Telsim.  *See Motorola Credit Corp. v. Uzan,* 274 F. Supp. 2d 481, 580 (S.D.N.Y. 2003), *aff'd in part, vacated in part,* 388 F.3d 39 (2d Cir. 2004).  Judge Rakoff recently entered an award of $1 billion in Motorola's favor for punitive damages.  *See Motorola Credit Corp. v. Uzan*, No. 02 Civ. 0666 (JSR), 2006 WL 290210 (S.D.N.Y. Feb. 8, 2006), at *4.

[2] These depositions were exhibits in the New York action, and are bates labeled Mot/tel 01-009217 to Mot/tel 01-009247 (Mr. Carney) and Mot/tel 01-009248 to Mot/tel 01-009297 (Mr. Raphael).

containing the sworn testimony of Ernst Kramer of Nokia from the preliminary injunction

hearing in the New York Action.[3]

On or about October 2005, Counsel for Lead Plaintiff advised Defendants' Counsel that

they planned to depose Merrill Lynch.  Indeed, on December 16, 2005, Counsel for Lead

Plaintiff issued subpoenas for the deposition testimony of the two Merrill Lynch witnesses

(Messrs. Raphael and Carney).  On December 21, 2005, Counsel for Lead Plaintiff issued a

subpoena to Merrill Lynch for the contact information for Messrs. Raphael and Carney, and

sought production of the complete deposition transcripts from Merrill Lynch.  The full Merrill

Lynch transcripts were thereafter provided to Counsel for Lead Plaintiff, along with the

addresses in England and France of the two witnesses (who at this point were no longer Merrill

Lynch employees).

To this point, while Counsel for Defendants indicated that, if necessary, they planned to

depose Mr. Kramer of Nokia, counsel relied on the fact that Lead Plaintiff intended to take the

depositions of the two Merrill Lynch witnesses and took no effort themselves to initiate the

process for obtaining the depositions.  This all suddenly changed on or about January 11, 2006,

when Counsel for Lead Plaintiff indicated that he had reviewed the Merrill Lynch transcripts

from the New York Action, concluded they were "pro-Motorola," and said that he had no

interest in taking the Merrill Lynch depositions.  At this point, Counsel for Defendants contacted

Merrill Lynch about the depositions.  On January 26, 2006, Defendants issued a subpoena to

Merrill Lynch for a Rule 30(b)(6) deposition witness.  It was not until February 9, 2006, that

Merrill Lynch advised that, because the only persons with knowledge of the pertinent facts

---

[3] This Exhibit has been bates-labeled Mot/tel 01-009505 to Mot/tel 01-009720.  Mr. Kramer's
direct examination begins at Mot/tel 01-009579.

worked for Merrill Lynch International, a company in the United Kingdom, it was Merrill Lynch International's policy to insist on compliance with the Convention on Taking of Evidence Abroad in Civil or Commercial Matters, July 27, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 [hereinafter "Hague Evidence Convention"] before making persons available for deposition overseas.[4]

The situation as to Mr. Kramer of Nokia is different. He had previously testified at the preliminary injunction hearing in the New York Action, where he was extensively cross-examined. Nokia has voluntarily agreed to provide Mr. Kramer (now a former employee) for deposition in England[5] and we have served a notice to take his deposition.[6] Because Merrill Lynch has not agreed to voluntarily produce any witnesses in England, we file this motion to request that the Court issue a Letter of Request under the Hague Evidence Convention to permit—if necessary—the testimony of Mr. Carney, now a former Merrill Lynch International employee who resides in England, and of a current Merrill Lynch International employee, a Mr. Kevin Smith, who also has knowledge of the pertinent facts. We would intend for this testimony to be used as trial testimony in this case.[7]

---

[4] Motorola is continuing to discuss these matters with the Merrill-related witnesses and it is possible that, ultimately, no formal process under the Hague Convention will be necessary.

[5] Since Mr. Kramer's deposition is voluntary, there is no need to proceed under the Hague Convention. *See* U.S Dept of State, *Judicial Assistance United Kingdom* http://travel.state.gov/law/info/ judicial/judicial_671.html (last visited Feb. 22, 2006) ("Attorneys from abroad are allowed to depose anyone in the U.K. provided they are willing witnesses. No commission from a court is necessary.")

[6] The date for that deposition has been deferred by agreement with Counsel for Lead Plaintiff given the filing of this motion and a challenge we anticipate Lead Plaintiff will file to Mr. Kramer's deposition going forward at all.

[7] We recognize that it will take time for the Hague Evidence Convention process to work its way through the system in the United Kingdom. But trial in this action will not take place until 2007 and as noted above, the reason for making this request now has only arisen due to the actions of Counsel for Lead Plaintiff.

Because the testimony of both Nokia and Merrill Lynch directly corroborates Motorola's conclusions regarding the loans to Telsim and the value of its collateral, Defendants will be significantly prejudiced without this testimony at trial. The testimony we are seeking obviously will come as no surprise to Counsel for Lead Plaintiff -- they have both Mr. Kramer's testimony from the New York Action's preliminary injunction hearing and the Merrill Lynch deposition transcripts from the New York Action before Judge Rakoff, and can fully prepare any possible cross examination for use at trial.

As to the requested testimony from Merrill Lynch, the Court has the power to transmit such a Letter of Request under the Hague Evidence Convention pursuant to 28 U.S.C. §1781 and 23 U.S.T. 2555. Additionally, Federal Rule of Civil Procedure 28(b) specifically authorizes the taking of depositions in a foreign country pursuant to a Letter of Request. The United Kingdom and the United States are both parties to and bound by the Convention's terms. *See e.g.* Hague Evidence Convention, *supra.*; Hague Conference on Private Int'l Law, *Hague Evidence Convention Status Table*, (Nov. 16, 2005) *at* http://www.hcch.net/index_en.php? act=conventions.status&cid=82 (illustrating the United States' and the United Kingdom's ratification as well). In seeking a Letter of Request, Article 1 of the Convention sets forth as follows:

> In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.

Hague Evidence Convention, *supra* art. 1.

Article 2 states:

> A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request coming from a judicial authority of another Contracting State and to transmit them to the

authority competent to execute them. Each State shall organize the
Central Authority in accordance with its own law.

*Id.* art. 2.

Pursuant to the foregoing mandates, Article 18 of the Convention provides the specific

dispensation for applying to the "competent authority" of the foreign state for "appropriate

assistance" to obtain evidence by compulsion. That article sets forth in full as follows:

A Contracting State may declare that a diplomatic officer, consular
agent or commissioner authorized to take evidence under Articles
15, 16 or 17, may apply to the competent authority designated by
the declaring State for appropriate assistance to obtain the evidence
by compulsion. The declaration may contain such conditions as
the declaring State may see fit to impose.

If the authority grants the application it shall apply any measures
of compulsion which are appropriate and are prescribed by its law
for use in internal proceedings.

*Id.* art. 18.

In the ratifying notes deposited by the government of the United Kingdom, upon

signature and ratification, the United Kingdom has designated the "Senior Master of the Supreme

Court (Queen's Bench Division)" as its Article 18 competent authority. *See* Hague Conferenc3

on Private Int'l Law, *United Kingdom- Competent Authority (Article 18,* 24), *at*

http://www.hcch.net /index_en.php? act=authorities.details&aid=527 (last visited Feb. 22, 2006).

The Article 2 competent authority designated by the United Kingdom is the "Foreign and

Commonwealth Office." *See* Hague Conference on Private Int'l Law, *United Kingdom - Central*

*Authority (Art. 2) at*  http://www.hcch.net/index_en.php?act=authorities.details&aid=526 (last

visited Feb. 22, 2006).

We have attached hereto the requisite Letter of Request under the Hague Evidence

Convention. And, while we are certainly willing both to follow the Hague Evidence Convention

procedure and to take the trial testimony in England of both the Nokia and Merrill Lynch

witnesses if the Court determines that that is the appropriate way to proceed here, frankly, we

respectfully submit that this is an unnecessary burden to impose on either Motorola or the Class

in this case. The transcript of Mr. Kramer's testimony from the preliminary injunction hearing

was admitted as an exhibit in the New York Action trial. The transcripts of the Merrill Lynch

depositions were also admitted as exhibits in the trial of the New York Action before Judge

Rakoff. The testimony shows that the witnesses were questioned about fairly straightforward

facts and documents concerning their dealings with Telsim.

Before filing this motion, we approached Counsel for Lead Plaintiff and Counsel for

ERISA Lead Plaintiff and asked if they would stipulate to the use of the Merrill Lynch

transcripts and Ernst Kramer's preliminary injunction testimony from the New York Action as if

they were taken as depositions in these proceedings. This was not the first time this procedure

was requested in this case. For example, to spare Lead Plaintiff the burden of deposing

witnesses from the *Wall Street Journal*, counsel for Defendants agreed, at Counsel for Lead

Plaintiff's request, that affidavits from reporters obtained by Lead Plaintiff without Defendants'

involvement would be treated as though they were depositions taken in this case.[8] When we

asked Counsel for Lead Plaintiff to follow the same procedure here and, once again, avoid the

need for duplicative depositions, Counsel for Lead Plaintiff refused. Consistent with Local Rule

37.2 we have had several discussions with Counsel for Lead Plaintiff attempting to work this

---

[8] *See* Agreed Motion for Leave to File Stipulation with Regard to the Wall Street Journal ¶ 2 a ("The parties have entered into the attached Stipulation with Regard to the Wall Street Journal Article ('Stipulation') to establish that: The affidavits of Jonathan Weil, Robert McGough, Shawn Young, and Scott Thurm (the 'Reporters'), attached to the Stipulation, shall be admissible at trial to the same extent as they would be had the statements been made at a deposition duly noticed and taken in this case with the opportunity for all parties to conduct questioning…."). This Court granted such motion on February 1, 2006.

out--all to no avail.  We have been unable to reach agreement to date with Counsel for ERISA Lead Plaintiff.

We respectfully request that the Court not require the parties to undergo the expense and burden of traveling to England solely to duplicate highly relevant testimony that was already given under oath in the case before Judge Rakoff by uninvolved third parties simply because Counsel for Lead Plaintiff thinks the testimony is "pro-Motorola."[9]  Indeed, we believe that, other than for incanting the phrase that they were not present to cross examine, Counsel for Lead Plaintiff would be hard pressed to show any specific prejudice from the examination of the Nokia or Merrill Lynch witnesses that took place.  All we seek is to be able to corroborate through the Nokia and Merrill Lynch witnesses the truth of what these people told Motorola -- something Counsel for Lead Plaintiff now knows about.

This Court has the discretion to fashion this alternate remedy to requiring the parties to go forward under the Hague Evidence Convention.

> The decision whether to admit a deposition from a prior lawsuit is vested in the district court's sound discretion.  Depositions can save the time, effort, and money of litigants, and help expedite trials.  Because the underlying objective is efficiency at trial without jeopardizing accurate fact finding, the district court is usually in the best position to decide whether a prior deposition should be admitted. . . .
>
> Rule 32(a) requires that the prior and present lawsuits involve the 'same subject matter' and 'the same parties or their representatives or successors in interest.'  These requirements have been construed liberally in light of the twin goals of fairness and efficiency.

*Hub v. Sun Valley Co.*, 682 F.2d 776, 777-78 (9th Cir. 1982) (internal citations omitted).

---

[9] We note that counsel for Lead Plaintiff has recently contended that he does not view the testimony as "pro-Motorola" but, instead, "pro-Plaintiff," all the more reason why Plaintiff should not be heard to object here.

The testimony given in the New York Action was elicited by Motorola seeking a recovery on behalf of its shareholders -- the Class here (which we note has led to judgments against the Uzan family in favor of Motorola and its shareholders in excess of $3 billion). Motorola had the same interest as Motorola's shareholders in developing the facts concerning Nokia's financing of Telsim and the efforts of Merrill Lynch to sell Telsim. In these circumstances, and given the community of interest between Motorola and its shareholders, there is an appropriate basis to conclude that the transcripts are appropriately admissible in this case. *See generally Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir. 1979); *In re Johns-Manville/Asbestosis Cases,* 93. F.R.D. 853, 855 (N.D. Ill. 1982); *PRG-Schultz Int'l Inc. v. Kirix Corp.,* No. 03 C 1867, 2003 WL 22410078, at *1-2 (N.D. Ill. Oct. 21, 2003). Following this general principal, Defendants believe that allowing the deposition transcripts to be used in the manner requested would meet the goal articulated by Seventh Circuit in *Ikerd v. Lapworth*, 435 F.2d 197 (7th Cir. 1970):

> Although it is generally the rule that a deposition is not admissible as to one not having the opportunity to be represented at its taking, the presence of an adversary with the same motive to cross-examine the deponent and identity of issues in the case in which the deposition was taken with the one in which it is sought to be used provide a well-recognized exception to the rule. In such case, the purpose of Rule 26(d)--to ensure the deposition is taken under adversarial circumstances--is substantially satisfied.[10]

*Id.* at 205.

But what is most significant here, we submit, is the issue of prejudice and burden. Indeed, other than for saying that they were not present to cross examine, we think Counsel for Lead Plaintiff will be hard pressed to explain to the Court why there is any specific  prejudice to

---

[10] Rule 26(d) was transferred to Rule 32(a). *See* Fed. R. Civ. P. 32 Advisory Committee Notes 1970 Amendment.

Lead Plaintiff from allowing use of the depositions and prior testimony in the manner we are requesting.  We are seeking permission to use the transcripts and prior testimony as if they were depositions taken in the case.  Counsel for Lead Plaintiff will, therefore, retain the right to object to any specific question they consider irrelevant or improper.  But there plainly is prejudice and undue burden to both Defendants and the Class in requiring the parties to undergo significant expense to travel to England to get the same testimony from the Nokia and Merrill Lynch witnesses again.

For the foregoing reasons, we respectfully request that the Court allow the Defendants to use the testimony of Mr. Kramer of Nokia and the two identified Merrill Lynch witnesses, taken under oath in the New York Action, in these proceedings.  In the alternative, we ask the Court (a) to approve, sign, and have the Clerk affix the seal of the Court to the Letter of Request seeking testimony of Mr. Kevin Smith and Mr. Sean Carney, and (b) to transmit the original signed, sealed letter of request to the attention of the Senior Master of the Supreme Court, Queen's Bench Division, Royal Courts of Justice, Strand London WC2A 2LL, England, U.K. so that this testimony can be secured for use in these proceedings.  The Defendants also respectfully request oral argument on their motion.

Respectfully submitted,

Dated: February 24, 2006

By ____s/Ada W. Dolph_____
Timothy F. Haley
Ian H. Morrison
Brian M. Stolzenbach
Ada Dolph
SEYFARTH SHAW LLP
55 E. Monroe Street, Suite 4200
Chicago, IL 60603-5803
Telephone: (312) 346-8000
Facsimile: (312) 269-8869
***Local Counsel for Defendants Motorola,
Inc., Christopher B. Galvin, Carl F.
Koenemann, and Robert L. Growney***

Stephen M. Sacks
John C. Massaro
John D. Daley
Emily M. Pasquinelli
ARNOLD & PORTER, LLP
555 Twelfth St., N.W.
Washington, DC 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
***Counsel for Defendants Motorola, Inc.,
Christopher B. Galvin, Carl F.
Koenemann, and Robert L. Growney***

## Certificate of Service

I, Ada W. Dolph, hereby certify that on February 24, 2006, I caused a true and correct copy of the foregoing to be served via U.S. Mail to the following:

Lester L. Levy
Robert C. Finkel
James A. Harrod
WOLF POPPER, LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile (212) 486-2093

Allyn Z. Lite
Bruce D. Greenberg
Alberto Rivas
Michael E. Patunas
Susan Pontoriero
LITE DePALMA GREENBERG & RIVAS, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

Fay Clayton
Carl Bergetz
ROBINSON CURLEY
& CLAYTON, P.C.
Suite 1700
300 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 663-3100
Facsimile: (312) 663-0303

Edwin K. Mills
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 986-5540

Robert D. Allison
ROBERT D. ALLISON &
ASSOCIATES
122 South Michigan Avenue
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

s/Ada W. Dolph
Ada W. Dolph