IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re:<br><br>MOTOROLA SECURITIES LITIGATION | No.: 03 C 00287<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM IN OPPOSITION TO LEAD PLAINTIFF'S
MOTION FOR DISTRIBUTION OF THE SETTLEMENT FUND**

Approximately 76,954 participants in the Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan") purchased 21,113,303 shares of Motorola, Inc. ("Motorola") common stock from February 3, 2000 through May 14, 2001 (the "Class Period") as an investment option in their individual retirement accounts. These active and retired Motorola employees suffered the same damages as did other Class Members due to the allegedly false and misleading statements made by Motorola and several of its officers and directors during the Class Period. Accordingly, the Plan brings this Claim on behalf of all damaged participants, opposing Lead Plaintiff's Motion for Distribution of the Settlement Fund, and requesting that the Court enter an order allowing the Plan participants to share in the Settlement Fund.

**I.      PROCEDURAL BACKGROUND**

This litigation is the result of 18 separate class action claims that were either filed in or transferred to this Court and consolidated under the caption above. The consolidated Class Action Complaint (the "Complaint") filed on October 10, 2003 alleges that Defendants issued materially false and misleading press releases concerning Motorola's business with Turkish wireless provider Telsim, overstated Motorola's business results for five quarters, and failed to disclose certain material information concerning Motorola's business with and financing to

CHICAGO/#1852948.7

Telsim during the Class Period – February 3, 2000 through and including May 14, 2001 – all in a scheme to artificially inflate the value of Motorola securities. The Complaint further alleges that Class Members purchased Motorola securities during the Class Period at artificially inflated prices due to Defendants' dissemination of materially false and misleading statements and omissions of material facts regarding Motorola in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, as amended (the "Securities and Exchange Act"), and Rule 10b-5 promulgated thereunder. (Stipulation Of Settlement ¶¶ A-D).[1]

On March 21, 2005, this Action was certified on behalf of a class consisting of:

> [A]ll persons who purchased publicly traded Motorola, Inc. common stock or certain registered debt securities during the period from February 3, 2000 through May 14, 2001 and who allegedly were damaged thereby. Excluded from the Class are Defendants herein, members of the Individual Defendants' immediate families, any subsidiary, affiliate, or control person of any such person or entity, the officers of Motorola and the legal representatives, heirs, successors or assigns of any such excluded party.

(Docket Entry 113).

After over four years of litigation, the parties agreed to settle the dispute for $190,000,000.00 in cash. On May 30, 2007, the Parties filed a Stipulation of Settlement and the Court approved the settlement and entered judgment on September 7, 2007. *See* (Docket Entries 530-532).

Pursuant to Paragraph 8(b) of the Stipulation of Settlement, the Plan submitted a Proof of Claim to the Claims Administrator on November 6, 2007. (LP Memo. in Supp., Ex. 1).[2] Lead Plaintiff responded on April 9, 2008 stating that it would advise the Claims Administrator to deny the claim because: (1) the Plan is an "affiliate" and is therefore excluded from the Class;

---

[1] The Parties previously filed the Stipulation of Settlement on May 30, 2008. (Docket Entry 530).
[2] Lead Plaintiff's Memorandum in Support of Its Motion for Distribution of the Settlement Fund (Docket Entry No. 536) shall be cited as (LP Memo. in Supp. at p. __).

- 2 -

(2) Plan participants did not purchase Motorola common stock; (3) the Plan's damages claim was imbalanced; and (4) the Plan's damages claim failed to capture consistent transaction information throughout the Class Period. (LP Memo. In Supp. pp. 5-12). The Plan submitted a timely response on April 29, 2008 addressing the issues raised in Lead Plaintiff's letter, and the Administrator again rejected the claim on June 30, 2008. (LP Memo. in Supp., Ex. 3-4).

On July 21, 2008, the Plan's counsel, Vedder Price P.C., sent a notice of contest of the Claims Administrator's June 30, 2008 rejection of the Claim and requested review by the Court pursuant to Paragraph 8(f) of the Stipulation of Settlement. (LP Memo. in Supp., Ex. 5). On September 2, 2008, Lead Plaintiff filed its Motion for Distribution of the Settlement Fund and submitted the Claim to the Court for review as part of its Motion, arguing that the Court should reject the claim. (LP Mem. in Supp. at p. 5). By Order dated September 11, 2008, the Court ordered the Plan to submit its opposition to Lead Plaintiff's Motion by October 10, 2008. (Docket Entry 543).

## II.  THE PLAN

The Plan is an individual account plan designed to comply with Section 404(c) of ERISA. As such, the Plan grants participants sole control over the funds in their individual accounts, and allows participants the opportunity to choose, from a broad range of investment alternatives, the manner in which assets in their accounts are invested. (Forsberg Aff. ¶ 7, Plan § 4.5).[3] The Motorola, Inc. 401(k) Profit Sharing Trust (the "Trust") was established to receive,

---

[3] The Affidavit of Sheila A. Forsberg (with attached Exhibits) is attached as Attachment 1 to this Memorandum and shall be cited as (Forsberg Aff. ¶___). The Plan document was previously filed in the ERISA Action with several redactions apparently made pursuant to this Court's Protective Order entered in that case. Accordingly, the Plan document is attached as Exhibit A to the Forsberg Affidavit and includes these same redactions. It shall be cited as (Plan § ___). The applicable Trust document for the Class Period is attached as Exhibit B of the Forsberg Affidavit and shall be cited as (Trust § ___).

hold, invest and dispose of Plan assets through its Trustee ("Northern Trust" or the "Trustee"), including contributions made by plan participants to the Plan. (Plan § 1.40; Trust Art. II, § 1).

During the Class Period, Plan participants could choose from several investment alternatives, including the Motorola Stock Fund (the "Fund"), which is a unitized employer stock fund that allows participants to acquire Motorola common stock. (Forsberg Aff. ¶¶ 8-9). The Fund aggregates and nets daily trades made by participants before purchasing or selling Motorola common stock and allocating to participant accounts. Approximately 99% of the Fund's assets are held in Motorola common stock. The other 1% is invested in short-term cash reserves to provide liquidity for daily trading by participants, participant loans, and distributions. Participants purchase "units" of the Fund and acquire a pro rata interest in the Motorola common stock held by the Fund.[4] Participants have investment control and voting rights over the amount of Motorola common stock allocated to their accounts. (Forsberg Aff. ¶¶ 11-13). The Plan document provides that:

> Each Participant shall be entitled to direct the manner in which the shares (including fractional shares) of Motorola, Inc. common stock in his account in the Motorola Stock Fund are to be voted. The Trustee shall vote such shares in accordance with the directions of the Participants….The Corporation will distribute proxy materials to all Participants who have an account balance in the Motorola Stock Fund prior to each stockholders' meeting at the same time it distributes such materials to all other stockholders.

(Plan § 4.1).[5]

---

[4] When a Plan participant elects to receive a distribution from the Motorola Stock Fund, for example, upon retirement, the participant can elect to receive cash equal to the value of his account or the equivalent whole number of shares of Motorola common stock plus cash for any fractional shares, determined based on the share price in effect on the distribution date. (Forsberg Aff. ¶ 13).

[5] Motorola has no control over the voting of shares allocated to participant accounts for which the participants have supplied no voting directions. For all such shares, the Trustee votes "proportionally in the same manner as the Trustee votes shares as to which the Trustee has received voting instructions." (Plan § 4.1). The Trustee also votes all fractional shares owned by participants to the extent possible to reflect the voting direction of the participants. (Plan § 4.1).

The Profit Sharing Committee (the "Committee") administers the Plan. The Committee is required to carry out its duties under the Plan and the Trust "solely in the interests of the [Plan] [p]articipants." (Plan § 7.2). Although the Committee has the authority and discretion to "control and manage the operation and administration of the Plan," the participants retain sole control over the investment of the funds in their accounts, including any investment in the Motorola Stock Fund. The Plan delegates responsibility to the Manager of Retirement Benefits Administration to act as the party responsible for ensuring that the investment instructions of individual participants are followed. (Plan § 7.11). Motorola's Board of Directors (the "Board") does not control the day-to-day administration of the Plan or the investment of participant funds. The Board's role is limited to the appointment and removal of the members of the Committee. (Plan § 7.1).

### III. ARGUMENT

The Court should deny Lead Plaintiff's Motion and allow the over 76,000 affected Plan participants to participate in the Settlement Fund. Contrary to Lead Plaintiff's position: (1) the Plan and (more importantly) its participants are not "affiliates" excluded from the Class; (2) Plan participants purchased publicly traded Motorola common stock; (3) the Plan submitted data demonstrating the purchases made by Plan participants in a manner such that a fair and equitable distribution can be made; and (4) *Howell v. Motorola*, Case No. 03 C 5044 (the "ERISA Action") does not preclude participants from being Class Members in this case or from sharing in the Settlement Fund. Plan participants suffered the same losses in the same manner as did any other Class Member, and to deprive them of their pro rata share of the Settlement Fund would be inequitable and discriminatory in favor of other Class Members.

### A. The Plan and Its Participants Are Not Affiliates

The Plan brings the Claim on behalf of Plan participants who purchased Motorola common stock by selecting the Motorola Stock Fund as an investment option in their individual retirement accounts during the Class Period. Lead Plaintiff rejected the Claim, arguing that the Plan is an "affiliate" of Motorola and therefore its participants are excluded from the Class. Although the term "affiliate" is not used or defined in the Stipulation of Settlement, Lead Plaintiff applies a definition of this term found in Securities and Exchange Act Rule 12b-2, and a related definition of the term "control" found in the same Rule. *See* (LP Memo. in Supp. at pp. 5-8). In conclusory fashion, Lead Plaintiff claims that because the Plan gives the Board authority to appoint and remove members of the Committee, plan participants are excluded from the Class because the Plan is "controlled" by Motorola. (LP Memo. In Supp. at pp. 6-7).

Lead Plaintiff's argument fails. The Complaint alleges violations of the anti-fraud provisions of the Securities and Exchange Act and seeks to compensate individuals who purchased Motorola stock at allegedly inflated prices. Therefore, the issue in this case is not whether the selection of Committee members is "controlled" by Motorola, or whether the Plan is an affiliate of Motorola for that purpose. Instead, the issue is whether Motorola exercises control over the investment of the assets held in participant accounts such that the Plan can be considered an affiliate of Motorola for purposes of buying and selling Motorola common stock. Although the Board has the power to appoint and remove the members of the Committee, neither the Committee nor the Plan controls the acquisition and disposition of Motorola common stock. To the contrary, the Plan's structure allows participants to direct the investment of the funds in their accounts from a variety of investment options, and the Plan and its Trustee must follow the participants' directions. Thus, particularly in this case, where the core claim concerns the decision to purchase or sell Motorola common stock, Motorola cannot be said to control the

- 6 -

- 7 -

Plan; and the Plan cannot be said to be an affiliate of or be controlled by Motorola for purposes of purchasing or selling Motorola common stock.

The Securities and Exchange Commission's ("SEC") guidance on the issue of "affiliate" status in the employee benefit plan context supports the Plan's position.  When considering self-directed individual account plans holding employer stock, the SEC has been consistently willing to look through the employee benefit plan and determine the application of the definition of affiliate based on the status of the participants, rather than the status of the plan or trustee.  *Conextant Systems, Inc.*, 1998 WL 823726, at *9 (SEC Ltr. Nov. 27, 1998); *accord Charles Schwab Corp.*, 1993 WL 214828, at *6  (SEC Ltr. March 1, 1993); *Rockwell Int. Corp.*, 1996 WL 700547, at *7 (SEC Ltr. Dec. 6, 1996); *Terminal Data Corp.*, 1992 WL 217852, at *2 (SEC Ltr. Sept. 3, 1992).  Following the SEC's reasoning, where the claims relate to the acquisition and disposition of Motorola common stock, as they do here, the relevant inquiry is whether the Plan participants are "affiliates" that control or are controlled by Motorola.

Here, the participants who invested in Motorola common stock are not affiliates of Motorola, and in fact Lead Plaintiff does not even attempt to argue that they are.  The Court should not exclude the participants from the Class simply because their claims have been brought by the Plan as their representative.[6]  The Plan can best represent participants because it has access to the data and transaction information to prove participants' claims.  *See Kurzweil v. Philip Morris Companies, Inc.*, 2001 WL 25700, at *4 (S.D.N.Y. 2001) (noting that there is no valid objection to having claims of participants brought by "[f]und trustees who have the documentation to prove them").

---

[6] To the extent that any of the Plan participants are considered affiliates, such as Motorola's officers and directors, the Court can exclude the officers and directors from participation in the Settlement Fund.

Moreover, the purpose and public policy behind the Securities and Exchange Act supports the Plan's position. *See Santa Fe Industries, Inc. v. Green* 430 U.S. 462, 477 (1977) (explaining that the "fundamental purpose" of the Securities and Exchange Act is "full disclosure" to investors). Lead Plaintiff brought this action under the anti-fraud provisions of the Act seeking to compensate individuals who purchased Motorola stock at inflated prices due to Defendants' allegedly illegal conduct. The exclusion of "affiliates" from the Class was no doubt intended to exclude any related company, director, officer, or other key employee from sharing in any recovery because these persons and entities allegedly had access to the material, non-public information at issue, or had knowledge of the allegedly misleading nature of the information disseminated by Motorola. However, the Plan participants, who are active and retired employees of Motorola, were in the same position as the average investor on the street with regard to their purchase of Motorola common stock and thus should not be precluded from sharing in the Settlement Fund.

Furthermore, the Court's rulings in the ERISA Action do not have anything to do with this case. The definition of affiliate under the Securities and Exchange Act and the definition of fiduciary under ERISA are parts of two entirely separate statutory regimes that regulate two different types of relationships. The fact that the Court held that the individual defendants (at the pleading stage) had a fiduciary duty to appoint or monitor members of the Committee does not rationally relate to Plaintiff's argument that the Plan is an affiliate of Motorola for purposes of purchasing Motorola common stock.

**B. Plan Participants Purchased Publicly Traded Motorola Common Stock During the Class Period**

Plan participants purchased Motorola common stock during the Class Period. In addition to claiming that the Plan is an affiliate, Lead Plaintiff seeks to exclude Plan participants from the

Class by claiming that they did not purchase "publicly traded" Motorola common stock. In support of its position, Lead Plaintiff claims that Plan participants only purchased ownership interests in the Fund (not Motorola common stock), and that "the Plan was the beneficial purchaser of this Common Stock." (LP Memo. in Supp. at pp. 8-9). Lead Plaintiff is wrong on both counts.

First, participants who elected to participate in the Motorola Stock Fund purchased publicly traded Motorola common stock for purposes of this case. When a participant selected the Fund as an investment alternative, they purchased "units" of the Fund, and therefore owned a pro rata share of the amount of the Motorola common stock shares held by the Fund. When the value of Motorola common stock went down or up, Plan participants' accounts went down or up in an amount approximately equal to the change in share price times the number of shares allocated to their account. (Forsberg Aff. ¶¶ 11-12). Thus, they were harmed in the same manner as other Class Members who did not purchase shares through a unitized fund.

Second, the Plan participants (not the Plan) were the "beneficial owners" of the Motorola common stock. Rule 13d-3 of the Securities and Exchange Act defines "beneficial owner" as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: [(1)] voting power which includes the power to vote, or to direct the voting of, such security; and/or, [2] investment power which includes the power to dispose, or to direct the disposition of, such security." Plan participants, as purchasers of units of the Motorola Stock Fund, owned a pro rata amount of the Motorola common stock held by the Fund. Participants retained investment control (including the power to direct the Trustee to buy, sell, or hold their shares) and full voting rights over the shares allocated to their individual

accounts. At all relevant times, the participants remained the "beneficial owners" of the Motorola common stock.

As the Plan explained in its Claim submissions, the Southern District of New York addressed this exact issue and held that a participant's beneficial ownership of securities through a unitized employer stock fund makes the participant a "purchaser" of the security held by the fund. *See Kurzweil*, 2001 WL 25700. In *Kurzweil*, plan participants purchased units of a similar unitized employer stock fund. The plan trustees objected to the exclusion of the participants from the class, claiming that they purchased employer stock through the fund; retained beneficial ownership, including voting rights; and suffered the same damages that direct purchasers did. The court held in relevant part:

> If the would-be claimants suffered damage that is just as real and measurable, and arises from the same source, as the damage suffered by Class Members, they would seem to have every right to be included in that group, even if their inclusion diminishes the share of the settlement fund available to open market purchasers and sellers. Nor does it seem material that not every instruction to buy or sell by a Fund investor necessarily resulted in an open market transaction. Once again, the damage that was suffered by those to whom or from whom shares were simply reallocated within the Fund was identical to the damage to those who bought and sold in the open market, and arose from the same source. Those who invested through the Fund bought and sold, whether the PM stock that underlay their units came from or went to another Fund investor, or whether that stock was bought from or sold to outsiders.

*Id* at *3; *see Great Neck Appreciation Investment Partnership v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 414 (E.D. Wis. 2002) (following the reasoning in *Kurzweil* and stating that beneficial owners of publicly traded stock had a "substantial stake in the settlement").

Lead Plaintiff attempts to distinguish *Kurzweil*, arguing that the class definition did not refer to "publicly traded" stock and the plaintiffs did not file a separate ERISA claim. These arguments are specious. There is no indication from the *Kurzweil* opinion or any related

CHICAGO/#1852948.7

document that the class definition was not limited to publicly-traded stock, nor does it make a difference. Just as in *Kurzweil*, Lead Plaintiff argues that a Plan participant's ownership in a unitized employer stock fund does not make them a purchaser of securities for purposes of class membership. However, as explained above, the Plan participants were the beneficial owners of the Motorola common stock with voting and investment power, and were thus subject to the same risk of loss as the other Class Members. Moreover, it makes no difference that the participants in *Kurzweil* did not file a separate ERISA action. As discussed in Section III.D, the legal theories under the Securities and Exchange Act and ERISA are not mutually exclusive and this Court should not preclude Plan participants from recovering by forcing them to pursue only a *potential* remedy under ERISA.

### C. The Plan's Damages Claim Is Not Deficient and a Distribution Can Be Made to Affected Participants

The Plan has provided participant-level data detailing each purchase and sale of Motorola common stock made by plan participants respecting their Plan accounts from July 1, 2000 through May 14, 2001. Lead Plaintiff's attempt to argue that the Plan's calculations are "inconsistent" and "imbalanced" ignores that the Plan has provided data specifically describing the identifiable trades at the participant-level for approximately ten and one half months of the Class Period. (Forsberg Aff. ¶¶ 23-24; LP Memo. in Supp., Ex. 1). Lead Plaintiff and the Claims Administrator have yet to explain what is wrong with this data or why it fails to prove the participants' claims for the relevant time period.

With regard to Lead Plaintiff's claim that the Plan's data is inconsistent, the Plan submitted Plan-level data for the period covering February 3, 2000 through June 30, 2000 because participant-level data is not available for this period due to unavoidable data limitations. From February 3, 2000 through May 17, 2000, participant-level data was maintained in an

outdated SunGard system and cannot be accessed in a cost-effective manner. (Forsberg Aff. ¶ 16).

Effective May 18, 2000, the Plan transferred its participant-level recordkeeping to Northern Trust Retirement Consulting, L.L.C., and is now administered by Hewitt Associates.[7] (Forsberg Aff. ¶ 15). To effectuate the transition from the SunGard software to the Northern Trust system, the Plan imposed a "blackout" period from May 17, 2000 through June 30, 2000. (Forsberg Aff. ¶ 18). Although participants could not *change* their investment elections during this period, participants continued to make contributions and purchased units of the Motorola Stock Fund according to their *pre-existing* elections put into place prior to the blackout period. The Trustee continued to make open-market purchases on behalf of Plan participants during this period, but no data exists to show the specific shares allocated to participant accounts during the blackout dates. Thus, the Plan submitted only the aggregate purchases and sales made by the Trustee during this period to approximate the amount of shares actually allotted to participant accounts. (Forsberg Aff. ¶ 19).

The consequence of these unavoidable data limitations certainly should not be to exclude Plan participants entirely from the Class, or even to preclude them from recovering for this time period. It is undisputed that participants were in the market during the Class Period and purchased shares of Motorola common stock through the Motorola Stock Fund while the price of that stock was allegedly inflated. Even though data is not available for a portion of this period, the participants were no less damaged, and the Plan can allocate a portion of the Settlement Fund to participant accounts in a fair and adequate manner. For example, the Plan submitted Plan-level data for the aggregate amount of shares purchased during this period as of July 1, 2000 and

---

[7] Northern Trust Retirement Consulting L.L.C. was subsequently purchased by and merged with Hewitt Associates.

CHICAGO/#1852948.7

can allocate a portion of the Settlement Fund on a proportionate basis according to relative participant ownership as of that date.

Furthermore, Lead Plaintiff seeks to exclude the participants because of an alleged "imbalance" in the data submitted by the Plan. (LP Memo. in Supp. at pp. 9-10). Lead Plaintiff does not advance a consistent explanation or any backup data to explain the split-adjusted basis that caused the "imbalance." Any "imbalance" between the Plan-level data and Lead Plaintiff's calculation is the result of Lead Plaintiff's attempt to compare and manipulate participant-level and Plan-level data. Lead Plaintiff combined these two data sets, but failed to take into account two factors: transaction aggregation and transaction delay. First, participant-level data and the Plan-level data may not "balance" on a given day due to the aggregation of participant sales and purchases of Motorola common stock. The Trustee does not purchase shares in the open market each time a participant purchases a unit of the Fund. Instead, the Trustee aggregates and nets purchases and sales to allow for daily trading and faster distributions, and only purchases or sells shares in the open market when the absolute number of the daily trades requires the Trustee to do so. (Forsberg Aff. ¶ 26). Nonetheless, the open-market purchases made by the Trustee during the Class Period are directly related to the volume of participant trades during that same period. And, as explained above, the Plan can allocate these amounts to participants in a fair and reasonable manner.

Second, Lead Participant also failed to account for the one-day delay between participant-level transactions and Plan-level transactions. When a participant directs the Plan to invest funds in the Motorola Stock Fund, the participant-level recordkeeping system reflects the transaction on the day it was submitted. However, the Plan-level data recordkeeping system will not reflect the transaction until the following day. Therefore, the amount of Motorola common

- 13 -

stock held at the Plan-level will not balance with the amount of Motorola common stock allocated to participants on a given day due to this one-day delay. (Forsberg Aff. ¶ 27). Accordingly, the "imbalance" calculated by the Lead Plaintiff is at least partially explained by these two factors not taken into account in the Lead Plaintiff's split-adjusted calculation.

Even assuming that there is an imbalance, Lead Plaintiff claims that the Plan submitted a claim based on a number of shares that was 1,379,753.60 less than its own split-adjusted calculation. Thus, the Plan's calculation is *lower* than Lead Plaintiff's calculation. *See* (LP Memo. In Supp. at p. 10, note 6). The remaining Class Members would not be harmed, but would in fact receive a greater portion of the Settlement Fund due to the Plan's lower calculation.

### D. The ERISA Action Does Not Preclude Plan Participants From Sharing in the Settlement Fund

Lead Plaintiff cites no authority for the proposition that this Court can preclude Plan participants from recovering in this action simply because they may be able to recover in the ERISA Action. The ERISA case is not an "alternative" to participation in the Settlement. The ERISA Action has been brought under a legal theory and statutory regime that is distinct from the securities context here. Because these claims are brought under a distinct legal theory, there is no guarantee that the class members in that action will recover anything. It is inequitable for the Plan participants to be denied participation in the securities settlement simply because of the possibility of prevailing in a class action brought under a separate statutory regime with distinct causes of action and remedies.

Furthermore, there is no evidence that the ERISA Action was the "intended" method of recovery for the Plan participants. (LP's Mem. In Supp. p. 7). If the Parties had so intended, the Stipulation of Settlement would have simply provided that no Plan participants would be eligible

- 14 -

to share in the recovery with regard to the shares purchased for their individual Plan accounts. Of course, the documents do not so provide. The carve-out of the ERISA claims from the release in this case expressly acknowledges the possibility that class members who were also Plan participants *could* also recover in the ERISA Action. There is no reason to believe that language was intended potentially to leave them with no recovery at all, and indeed is properly read to allow participants to share in the securities settlement and in any additional legal recovery under ERISA.

It may be that the Plan participants' recovery in the ERISA Action (if any) is limited to some degree by the damages they receive as settlement proceeds in this case. But, this is not a question for the Court to address at this time and in this case. If this question is ever reached, it is one for the Court to address in the ERISA Action at the appropriate time.

### IV.   CONCLUSION

For the foregoing reasons, the Court should deny Lead Plaintiff's Motion for Distribution of the Settlement Fund and should Order the Claims Administrator to grant the Plan's Claim.

> Respectfully submitted,
>
> MOTOROLA, INC. 401(k) PROFIT SHARING PLAN
>
> By:   s/ Patrick W. Spangler
>              One of Its Attorneys

Michael G. Cleveland
Charles B. Wolf
Patrick W. Spangler
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois  60601-1003
(312) 609-7500
Dated: October 10, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copies of the foregoing MEMORANDUM IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR DISTRIBUTION OF THE SETTLEMENT FUND were served via electronic means through the Court's electronic filing system on October 10, 2008 to persons on the following service list:

| | |
|---|---|
| Lester L. Levy<br>Wolf Popper LLP<br>845 Third Avenue<br>New York, New York  10022<br><br>Allyn Z. Lite<br>Lite DePalma Greenberg & Rivas, LLC<br>Two Gateway Center, 12th Floor<br>Newark, New Jersey  07102<br><br>*Attorneys for State of New Jersey and Co-Lead Counsel for Plaintiff Class* | John C. Massaro<br>Arnold & Porter LLP<br>555 Twelfth Street, N.W.<br>Washington, DC<br><br>Timothy F. Haley<br>Seyfarth Shaw LLP<br>131 S. Dearborn Street, Suite 2400<br>Chicago, Illinois  60603<br><br>*Attorneys for Defendants* |
| Mark A. Stang<br>Chuhak & Tecson<br>30 S. Wacker Drive, Suite 2600<br>Chicago, Illinois  60606<br><br>*Attorney for Edward A. Cox, Jr.* | Fay Clayton<br>Robinson Curley & Clayron, P.C.<br>300 South Wacker Drive, Suite 1700<br>Chicago, Illinois  60606<br><br>*Liaison Counsel for Plaintiff Class* |

By:   s/ Patrick W. Spangler