IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re:<br><br>MOTOROLA SECURITIES LITIGATION | No.: 03 C 00287<br><br>Judge Rebecca R. Pallmeyer |

## AFFIDAVIT OF SHEILA A. FORSBERG

Sheila A. Forsberg, being first duly sworn on oath, deposes and says:

1. I have been employed by Motorola, Inc. ("Motorola") for 24 years. My entire employment has been in the area of employee benefits.

2. Since December 17 2008, I have been Senior Director, Global Rewards – Benefits. In that capacity, I am responsible for Motorola employee benefits worldwide. From June 2001 to December 2007, I was Director, Global Rewards – Benefits. In that capacity, I was responsible for Motorola employee benefits in the United States. Before that, from January 1999 to April 2001, I was Director, Global Retirement Benefits Strategies, responsible for the strategy development of retirement benefits worldwide, including design and implementation changes to the Motorola 401(k) Profit Sharing Plan ("the Plan").

3. I make this Affidavit on my own personal knowledge and if called as a witness could competently testify as follows.

4. By virtue of the positions I have held with Motorola, I am familiar with the operation, administration and recordkeeping of the Plan, particularly with regard to the Motorola Stock Fund.

5. I have reviewed Lead Plaintiff's Memorandum in Support of its Motion for Distribution of Settlement Fund, including the attached exhibits, and make this Affidavit in support of the Opposition to that Motion filed by the Plan.

6. Attached as Exhibit A to this Affidavit is a true and correct copy of the Plan as in effect during the period February 3, 2000 to May 14, 2001 ("the Class Period").

7. The Plan is an individual account plan designed to comply with Section 404(c) of ERISA. As such, the Plan grants participants sole control over the funds in their individual accounts, and allows participants the opportunity to choose, from a broad range of investment alternatives, the manner in which the assets in their accounts are invested.

8. Attached as Exhibit B to this Affidavit is a true and correct copy of the Motorola, Inc. 401(k) Profit Sharing Trust (the "Trust"). The Trust receives, holds, invests and disposes of Plan assets through its Trustee, Northern Trust, including contributions made by plan participants to the Plan.

9. During the Class Period, Plan participants could choose from several investment alternatives, including the Motorola Stock Fund.

10. The Motorola Stock Fund is a "unitized" employer stock fund. This arrangement is common in employee benefit plans sponsored by large public companies with a high volume of employee transactions. Approximately 99% of the Fund's assets are invested in Motorola common stock. The remaining 1% of the Fund's assets are invested in short-term cash reserves used to provide liquidity for daily trading by Plan participants, participant loans, and distributions. The Fund aggregates and nets daily trades directed by participants before purchasing or selling securities on the stock exchanges and allocating shares to participant

accounts. This structure allows participants to benefit from lower transaction costs and greater liquidity to diversify their holdings quickly and at a low cost.

11. When a participant contributes money to the Motorola Stock Fund, generally by payroll deduction, or by directing that money held in another fund be transferred to the Motorola Stock Fund, that money is used to purchase "units" of the Fund. By owning units of the Motorola Stock Fund, participants own a pro rata share of the amount of Motorola common stock shares held by the Fund.

12. Plan participants retain investment control and voting rights over the shares of Motorola common stock allocated to their accounts. If the value of Motorola common stock increases or decreases, the value of the participant's account increases or decreases in an amount that is approximately equal to the change in the stock price multiplied by the participant's pro rata ownership of the Motorola common stock held by the Fund.

13. When a Plan participant elects to receive a distribution from the Motorola Stock Fund, for example, upon retirement, the participant can elect to receive cash equal to the value of his account or the equivalent whole number of shares of Motorola common stock plus cash for any fractional shares, determined based on the share price in effect on the distribution date.

14. For some time prior to the start of the Class Period through May 17, 2000, participant-level data relating to the investments made by participants in all available Plan funds, including the Motorola Stock Fund, was maintained on a proprietary software system developed by SunGard.

15. Effective May 18, 2000, the Plan's recordkeeping software used to record and maintain participant data was changed from the SunGard software to software maintained by

Northern Trust Retirement Consulting, L.L.C. Northern Trust Retirement Consulting was acquired by Hewitt Associates in 2004; Hewitt Associates now maintains the Plan's data.

16. It is not reasonably feasible for the Plan to generate participant-level data regarding purchases of Motorola common stock for the period when the SunGard system was used. Doing so would require restoring both the SunGard software and hardware to run the data. The cost of doing that has been estimated to exceed several million dollars.

17. Because participant-level data is not available for the part of the Class Period when the SunGard system was used, the Plan submitted Plan-level purchase and sale information for that period in support of its Claim under the Stipulation of Settlement in this case (the "Claim").

18. In order to effectuate the transition from the SunGard software to the Northern Trust Retirement Consulting software, the Plan imposed a "blackout" period from May 17, 2000 through June 30, 2000.

19. During the blackout period, participants could not change the allocation of their existing account balances or future contribution elections among various investment fund options under the Plan. However, during the blackout period, participants continued to make contributions through payroll deductions and the Plan continued to purchase Motorola common stock as necessary to meet the pre-existing directives given by all Plan participants to purchase Motorola stock with their contributions prior to the blackout period. However, the Plan did not allocate these amounts to participant accounts during the blackout period. Therefore, the Plan submitted only plan-level data for this period in support of its claim.

20. During the blackout period, on June 2, 2000, Motorola stock split three for one.

21. The blackout period ended on July 1, 2000, and the transition to the Northern Trust record keeping system was effective July 1, 2000.

22. After July 1, 2000 – and for the remainder of the Class Period – the Plan's data shows each purchase or sale made for each participant who had invested any part of his or her individual account balance in the Motorola Stock Fund.

23. In support of its Claim, the Plan submitted a computer disk containing individual purchase and sale data after July 1, 2000 for every participant who had directed that any part of his or her Plan account balance be invested in Motorola common stock through the Motorola Stock Fund.

24. Following is an example of the data contained on that disk and submitted for one such Plan participant with recurring contributions through payroll deduction:

| TRANSACTION DATE | TRANSACTION TYPE | TRANSACTION VALUE | TRANSACTION UNITS (NUMBER OF SHARES) | SHARE PRICE |
|---|---|---|---|---|
| 7/7/00 | Recurring Purchase | $78.64 | 0.75 | $103.8089 |
| 8/4/2000 | Recurring Purchase | $78.64 | 0.7 | $110.967573 |
| 8/17/2000 | Recurring Purchase | $78.64 | 0.67 | $115.998968 |
| 9/1/2000 | Recurring Purchase | $78.64 | 0.69 | $112.881546 |
| 9/15/2000 | Recurring Purchase | $78.64 | 0.71 | $110.155887 |
| 9/29/2000 | Recurring Purchase | $78.64 | 0.88 | $89.12169 |
| 10/13/2000 | Recurring Purchase | $78.64 | 1.12 | $70.090069 |
| 10/27/2000 | Recurring Purchase | $78.64 | 1.13 | $69.286066 |
| 11/9/2000 | Recurring Purchase | $78.64 | 1.08 | $72.629066 |

CHICAGO/#1854959.6

| TRANSACTION DATE | TRANSACTION TYPE | TRANSACTION VALUE | TRANSACTION UNITS (NUMBER OF SHARES) | SHARE PRICE |
|---|---|---|---|---|
| 11/27/2000 | Recurring Purchase | $78.64 | 1.14 | $68.534987 |
| 12/8/2000 | Recurring Purchase | $78.64 | 1.28 | $61.029791 |
| 12/22/2000 | Recurring Purchase | $78.64 | 1.32 | $59.472828 |
| 1/10/2001 | Recurring Purchase | $78.64 | 1.17 | $67.093231 |
| 1/18/2001 | Recurring Purchase | $78.64 | 1.03 | $75.705067 |
| 2/1/2001 | Recurring Purchase | $78.64 | 1.12 | $69.798738 |
| 2/15/2001 | Recurring Purchase | $78.64 | 1.29 | $60.625195 |
| 2/22/2001 | Recurring Purchase | $88.51 | 1.61 | $54.85854 |
| 3/1/2001 | Recurring Purchase | $78.64 | 1.55 | $50.634076 |
| 3/19/2001 | Recurring Purchase | $78.64 | 1.64 | $47.695916 |
| 3/29/2001 | Recurring Purchase | $78.64 | 1.7 | $46.16298 |
| 4/16/2001 | Recurring Purchase | $78.64 | 1.79 | $43.700332 |
| 4/26/2001 | Recurring Purchase | $78.64 | 1.69 | $46.376666 |
| 5/10/2001 | Recurring Purchase | $78.64 | 1.56 | $50.122694 |
| 5/24/2001 | Recurring Purchase | $78.64 | 1.52 | $51.469863 |
| 6/7/2001 | Recurring Purchase | $78.64 | 1.59 | $49.341743 |
| 6/21/2001 | Recurring Purchase | $78.64 | 1.76 | $44.614132 |
| 7/6/2001 | Recurring Purchase | $78.64 | 1.61 | $48.760665 |

25.     Approximately 76,954 Plan participants purchased 24,113,303 shares of Motorola stock during the period July 1, 2000 to the end of the Class Period. Information similar to the

CHICAGO/#1854959.6

Table provided in paragraph 24 above is available for every purchase made during the period after July 1, 2000 for the remainder of the Class Period.

26.     I understand that Lead Plaintiff asserts that its Exhibit 6 to its Memorandum in Support of its Motion for Distribution of the Settlement Fund shows that the data submitted by the Plan is out of balance. Lead Plaintiff's Exhibit 6 combines Plan-level and participant-level purchase and sale data. That is not the correct way to calculate the amount of Motorola stock held by participants in the Motorola Stock Fund at any given time because, as a unitized fund, shares which may be directed to be sold by one participant are transferred to the account of another participant in the first instance; as a result, the number of purchases and sales in participant accounts will not match the Plan's total purchases and sales. This is illustrated by the following simple example: if on a certain date, Participant A with ten shares of Motorola common stock in the Fund directed that those shares be sold and on the same day Participant B directed that eight shares be bought, eight of the ten shares sold by Participant A would be transferred to Participant B's account and the Plan would sell the remaining two shares on the open market. Assuming there were no other transactions that day, even though at the end of the day Participant A had sold ten shares, and Participant B bought eight shares, which their individual account data would reflect, Plan data would show a sale of only two shares and no share purchases.

27.     In addition, the imbalance identified in Exhibit 6 to Lead Plaintiff's Memorandum in Support of its Motion for Distribution of the Settlement Fund fails to take into account the one (1) day delay between participant-level transactions and Plan-level transactions. When a participant directs the Plan to invest funds in the Motorola Stock Fund, the participant-level recordkeeping system reflects the transaction on the day it was submitted. However, the

CHICAGO/#1854959.6

Plan-level data recordkeeping system will not reflect the transaction until the following day. Therefore, the amount of Motorola common stock held at the Plan-level will not balance with the amount of Motorola common stock allocated to participants on a given day due to this one-day delay.

FURTHER AFFIANT SAYETH NAUGHT

*Sheila A. Forsberg*
Sheila A. Forsberg

SUBSCRIBED AND SWORN TO
before me this __10th__ day of __October__, 2008.

*Mary Ann Kostelnik*
Notary Public

> OFFICIAL SEAL
> MARY ANN KOSTELNIK
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 12-6-2010